IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| DELYORCE RAYE REBOUCHE,<br><br>Plaintiff,<br><br>vs.<br><br>DEERE & COMPANY a/k/a JOHN DEERE COMPANY, RODGER BURRIS, AND BRUCE BOARDMAN,<br><br>Defendants. | No. C12-2064<br><br>RULING ON MOTION FOR SUMMARY JUDGMENT |

TABLE OF CONTENTS

I. INTRODUCTION .................................... 2

II. PROCEDURAL HISTORY ............................ 2

III. RELEVANT FACTS ................................. 3
    A.   The Parties ................................. 3
    B.   Rebouche's Work History .................... 4
    C.   Global Jobs Evaluation ("GJE") Process ....... 5
    D.   Implementation of GJE ....................... 6
    E.   Rebouche's Administrative Charges ........... 6
    F.   Rebouche's Retaliation Claim ................ 7

IV. SUMMARY JUDGMENT STANDARD ................ 9

V. DISCUSSION ...................................... 10
    A.   Rebouche's Sex Discrimination Claims ........ 10
        1.   Applicable Law ........................ 10
        2.   Discussion ............................ 11
            a.   Transfer to another position in 2001 ........ 11
            b.   GJE mapping in 2004 ..................... 12
    B.   Rebouche's Retaliation Claims ............... 15

|       |    | *1.*   | *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15 |
|       |    | *2.*   | *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16 |
|       | C. | *Additional Defenses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 |

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 58) filed by the Defendants on February 2, 2014, the Resistance (docket number 74) filed by the Plaintiff on March 14, and the Reply Brief (docket number 80-2) filed by the Defendants on April 1. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On August 31, 2012, Plaintiff Delyorce Raye Rebouche filed a complaint against John Deere Agri Services, Inc., Deere & Company a/k/a John Deere Company, Rodger Burris, and Bruce Boardman. Rebouche claims sex discrimination and retaliation. On October 17, 2012, Rebouche voluntarily dismissed John Deere Agri Services, Inc. as a defendant.

On November 12, 2012, Defendants filed a motion to dismiss, asking the Court to dismiss Rebouche's Title VII claims (Counts I and II) against the individual defendants, Burris and Boardman. Defendants also asked the Court to find that the equal pay provision of the Iowa Civil Rights Act ("ICRA") does not apply retroactively and, therefore, to the extent Rebouche seeks enhanced damages in Counts V and VI which preceded the enactment of Iowa Code § 216.6A, the claim should be dismissed. The motion was granted and those portions of Rebouche's complaint were dismissed on February 14, 2013. *See* docket number 23. Defendants filed an answer to the complaint on February 28, 2013.

Meanwhile, on November 26, 2012, the Court adopted a Scheduling Order and Discovery Plan submitted by the parties. Also at that time, the case was referred to me for the conduct of all further proceedings and the entry of judgment, in accordance with 28 U.S.C. § 636(c) and the consent of the parties. After consulting with counsel, this case was scheduled for trial on January 20, 2015.

On February 2, 2014, Defendants timely filed the instant motion for summary judgment.

## III. RELEVANT FACTS

### A. The Parties

Delyorce Raye Rebouche, who was born in September 1945, holds a bachelor's degree in chemistry from the University of Northern Iowa. She also completed a two-year program in medical technology at Allen College and taught clinical chemistry and phlebotomy at Hawkeye Tech for two years. Rebouche started working for John Deere on October 31, 1977. At the time of her deposition on August 9, 2013, Rebouche was still employed at Deere.

Deere & Company, a/k/a John Deere Company, is in the business of manufacturing agricultural, forestry, foraging, and construction equipment, with its principal place of business located in Moline, Illinois. In Iowa, Deere has facilities in Des Moines, Ottumwa, Waterloo, Dubuque, and Davenport. Deere's Waterloo Works develops and manufactures tractors.

Rodger Burris began working at Deere in 1978 and retired in 2004. Burris was Rebouche's supervisor until he retired. At the time of his retirement, Burris had approximately 20 employees reporting to him as manager of materials engineering.

Bruce Boardman became Rebouche's supervisor when Burris retired. After 2004, Boardman was the overall manager for metallurgy and polymers. Boardman retired in 2010.

3

## B. Rebouche's Work History

Rebouche started working at Deere on October 31, 1977 as a laboratory assistant. The position was a pay grade 4. In 1980, she assumed a pay grade 5 technician position when her duties expanded and she began working on customer tractors. In 1981, she became a senior technician, began running more complex analyses and performing lab work, and was elevated to a pay grade 6. In 1988, Rebouche was classified as a chemical/metallurgical engineer and was increased to pay grade 7.

In 1998, Rebouche lodged an internal complaint with human resources regarding alleged gender discrimination in her department. Burris was aware of a complaint regarding an alleged gender-based pay disparity in 1998, but he was not told who had lodged that complaint. Following an investigation by Deere's human resources department, it was determined that there was no evidence of gender discrimination in the department.

At the end of 2001, Rebouche's job was eliminated during a downsizing of staff in her department, during which Burris was instructed to eliminate three positions in his department. Rebouche thinks that the elimination of her job at the end of 2001 was "probably" retaliation by Burris for Rebouche's 1998 complaint to human resources. Rebouche admits that she did not raise a concern of retaliation with anyone in 2001 when her job was eliminated. After her former job was eliminated, Rebouche took a rubber specialist position in the materials engineering group at Deere's Product Engineering Center. Rebouche's salary, grade, and position title remained the same following her reassignment. At her deposition, Rebouche testified that the new job "didn't have the breadth of different things to work with that the failure analysis position had, but it is a good position."

In 2007, Rebouche's job title changed and she assumed a grade 8 position. Two years later, Rebouche became a grade 9 staff engineer. Rebouche concedes that she is

properly being paid at pay grade 9 today. Rebouche claims, however, that she should have been promoted to a pay grade 9 in 2004 when GJE was adopted.

## C. *Global Jobs Evaluation ("GJE") Process*

Each position at Deere is assigned a job grade. In or around 2002, Deere began a process to evaluate the job grades of each position in its worldwide organization. This evaluation was referred to as the Global Jobs Evaluation process ("GJE"). GJE is a systemic process for creating a hierarchy of jobs based on their content and value to Deere. It is a formal job evaluation system that produces consistent results. Deere used GJE to assess the work level of salaried employees at Deere on a global level. One of Deere's objectives for implementing GJE was to achieve an improved consistency in job grading and outcomes. GJE did not apply to production workers.

Deere hired the Hay Group, an independent global management consulting firm, to provide consulting services for the implementation of GJE at Deere. The Hay method of job evaluation is the most widely used proprietary job evaluation methodology in the world. It is used by an estimated 8,000 organizations, including half the Fortune 50 organizations, in over 30 countries. The methodology employed in the GJE process is described in detail in Defendants' statement of undisputed facts. Prior to GJE, Deere used a point rating table to assess jobs for job grade purposes. This work was done with a supervisor for the position under review, human resources, and a representative from Deere's corporate office.

Deere implemented GJE on May 1, 2004. Prior to GJE, Deere had 20,000 positions that were mapped to 3,000-4,000 jobs. Through GJE, Deere mapped 20,000 positions to 2,100 jobs. Overall, approximately 70% of jobs at Deere were evaluated in the same grade they had been in before GJE, about 10% were in lower grades, and about 20% were in higher grades. For jobs evaluated at grades lower than the pre-GJE grade, Deere committed to keeping the affected employees in their existing grade as long as the

employee remained in the same job. Deere's commitment to not reduce any employee's grade as a result of GJE ensured that employees evaluated in jobs with a lower effective grade would not lose pay or pay opportunity.

### D. Implementation of GJE

Prior to implementation of GJE, Rebouche's job title was chemical/metallurgical engineer, at pay grade 7. After GJE was implemented, Rebouche was mapped to the job title of Engineer II Product, also at pay grade 7. That is, Rebouche remained at the same pay grade after GJE was implemented. Three other employees holding the job title chemical/metallurgical engineer (Daniel Merkel, Mary Olsen, and Ann Olsson) were also mapped by GJE as "Engineer II" and remained at pay grade 7.

Rebouche claims, however, that she should have been increased to pay grade 9. In support of her claim, Rebouche cites three male metallurgists: Joe Wilson, Gary Schmadeke, and Fred Van Schepen. Schmadeke was a senior chemical/metallurgical engineer prior to GJE, and was mapped under GJE as a Supervisor Product Engineering I. Schmadeke was at pay grade 8 prior to GJE, and remained at pay grade 8 after GJE was implemented. Schmadeke had persons reporting directly to him at the time GJE was implemented, while Rebouche did not. Both Wilson and Van Schepen were senior engineers prior to GJE, at pay grade 8. After GJE was implemented, Wilson's title was Staff Engineer Product and Van Schepen's title was Environmental Professional Staff, with both receiving an increase to pay grade 9. Van Schepen was responsible for supervising all environmental engineers.

### E. Rebouche's Administrative Charges

On October 27, 2004, Rebouche filed a charge of discrimination with the EEOC, alleging age and sex discrimination. On November 5, 2004, the EEOC cross-filed Rebouche's charges with the Iowa Civil Rights Commission ("ICRC"). Rebouche's claim identified John Deere Waterloo Works as her employer, and notice was given to Deere &

Company and John Deere Waterloo Works. Neither of the individual defendants, Rodger Burris and Bruce Boardman, were named as respondents in the charge.

Boardman testified in his deposition that he first learned that Rebouche had filed a complaint with the EEOC in mid-September 2012, after the lawsuit was filed and more than two years after he retired. Rebouche admits that Boardman never told her that he was aware she had filed a charge with the EEOC, and she has seen no email, memo, or other document indicating that Boardman was ever aware of Rebouche's charge until this lawsuit was filed. According to Boardman, nobody from the EEOC ever talked to him about Rebouche's discrimination claims against Burris, or her allegations of retaliation against Boardman.

Burris also testified in his deposition that he first learned about the allegations being made by Rebouche when he received the suit papers in the mail. According to Burris, the first time he saw Rebouche's EEOC charge was when Rebouche's deposition was taken in August 2013.

## F. Rebouche's Retaliation Claim

Boardman became Rebouche's supervisor after Burris retired in 2004. Rebouche alleges that after she filed her discrimination charge with the EEOC in October 2004, Boardman retaliated against her by giving her inaccurate performance evaluations in 2004 and 2005. At her deposition, Rebouche did not recall if Boardman's evaluations of her performance were "generally fair," testifying that "I think I had some issues with some of them at the time, but not largely." On November 18, 2004, Boardman rated Rebouche's overall performance as "Exceeds Expectations," falling between "Far Exceeds Expectations" and "Fully Meets Expectations." Rebouche thinks the "exceeds expectations" rating should have been higher, but admits that she "hadn't worked for [Boardman] for very long" prior to the 2004 evaluation, "so he didn't really have full knowledge of what I did."

7

In 2005, Boardman rated Rebouche's performance as "Fully Meets Expectations." Boardman testified at his deposition that he believed this was a "good rating" and he was happy with Rebouche's work. Rebouche believes she should have received an "exceeds expectations" rating, and believes that Boardman gave her the lower rating because "he was not happy that [Rebouche] had filed the EEOC complaint." Rebouche could not identify any particular component of the 2005 evaluation which she considered unfair or retaliatory, but rather took issue with the overall rating, believing she should have received a higher rating. Rebouche never complained to anyone regarding the cumulative rating on the 2005 evaluation and does not even know if she told Boardman that she thought the evaluation was inappropriate.

In addition to her complaints regarding the 2004 and 2005 performance evaluations, Rebouche believes that Boardman generally mistreated her and exhibited a poor attitude about Rebouche's work. At her deposition, Rebouche described Boardman's hostility as "a lot of subtle little things," and Boardman was "not very nice" about her work. Rebouche believes that because Boardman is a metallurgist, and she works in polymers and rubber, he had a lack of understanding and a poor attitude about the people who worked in polymers and rubbers. Rebouche conceded that Boardman treated other employees who worked with rubbers or polymers — including both males and females — differently and less favorably than metallurgists.

From 2006 to the present, Jay Olson has been Rebouche's supervisor, and Boardman, prior to his retirement, was Olson's manager. In 2007, Rebouche's job title changed and she went from a pay grade 7 to a pay grade 8 position. In 2010, following another reorganization, Rebouche was moved to a position as a staff engineer in materials engineering, at pay grade 9. Shortly before she received the grade 9 position, Rebouche assumed team leader duties and a corresponding increase in responsibility.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th

Cir. 2011). "Although employment discrimination cases are 'often fact intensive and dependant on nuance in the workplace, they are not immune from summary judgment." *Id.* "If there is no dispute of material act and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Id.*

## V. DISCUSSION

In her complaint, Rebouche asserts sex discrimination in violation of Title VII and the ICRA (Counts I and V), and retaliation in violation of Title VII and the ICRA (Counts II and VI). (The Court notes parenthetically that the complaint does not include any count III or IV.) For a variety of reasons, Defendants ask that all of Rebouche's claims be summarily dismissed.

### A. Rebouche's Sex Discrimination Claims

#### 1. Applicable Law

The Court will first address Rebouche's claim that Defendants discriminated against her based on her sex. Title VII makes it unlawful to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment based on the individual's sex. 42 U.S.C. § 2000e-2(a). Similarly, the ICRA makes it unlawful to discriminate against any employee because of the employee's sex. Iowa Code § 216.6(1)(a).

To survive summary judgment in a Title VII discrimination claim, the employee must present direct evidence of discrimination, or circumstantial evidence which would establish an inference of unlawful discrimination. *McCullough v. University of Arkansas for Medical Services*, 559 F.3d 855, 860 (8th Cir. 2009). If there is no direct evidence of sex discrimination, then the plaintiff's claims are analyzed under the familiar burden-shifting scheme of *McDonnell Douglas*. At the first step of the analysis in applying the *McDonnell Douglas* test, the plaintiff has the burden of establishing a *prima facie* case of sex discrimination. *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1083 (8th Cir. 2013). A

*prima facie* case creates a presumption that the employer unlawfully discriminated against the plaintiff and shifts the burden to the employer to articulate a legitimate nondiscriminatory reason for its actions. *Id.* If the employer meets this burden, then the presumption of discrimination dissolves and the burden returns to the plaintiff to demonstrate that the proffered reason is a mere pretext for sex discrimination. *Id.*

To establish a *prima facie* case of sex discrimination, Rebouche must show that she (1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class. *Jackman v. Fifth Judicial Dist. Dept. of Correctional Services*, 728 F.3d 800, 804 (8th Cir. 2013).

The Court generally applies the same analysis to sex discrimination claims under Title VII and the ICRA. Rebouche must prove that her sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). Similarly, in an action brought pursuant to the ICRA, the plaintiff must prove that her age or sex was "a motivating factor" in the employer's decision. *Newberry v. Burlington Basket Co.*, 622 F.3d 979, 981-83 (8th Cir. 2010) (citing *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 11-14 (Iowa 2009)).

### 2. Discussion

Rebouche asserts two instances of sex discrimination: First, when her job was eliminated in 2001 and she was transferred to another position at Deere; and second, when she remained at pay grade 7 after GJE was implemented in 2004. The Court will address the two claims in order.

#### a. Transfer to another position in 2001

At the end of 2001, Rebouche's department was downsized and three positions were eliminated, including Rebouche's position. After her former job was eliminated, Rebouche took a rubber specialist position at the same salary, pay grade, and position title.

11

Rebouche testified that the new job "didn't have the breadth of different things to work with" as her former job, but admitted that it was a "good position." Without any proof, Rebouche opines that Burris' actions at that time constituted sex discrimination or were "probably" retaliation for Rebouche's complaint filed internally three years earlier.

Rebouche's claim, if any, arising from her transfer to another position in 2001 is clearly time-barred. A person claiming discrimination must file a charge with the EEOC within 180 days after the alleged unlawful employment practice occurred, or file a claim with the ICRC within 300 days after the alleged discriminatory practice.[1] *See* 42 U.S.C. § 2000e-5(e)(1) and Iowa Code § 216.15(12). Rebouche filed her charge of discrimination with the EEOC on October 27, 2004, approximately three years after the alleged discriminatory action in 2001. It makes no difference that the earlier claims may be similar to those charged by Rebouche in 2004. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts of alleged in timely filed charges."); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) ("Each discrete act is a different unlawful employment practice for which a separate charge is required."); *Lynch v. City of Des Moines*, 454 N.W.2d 827, 831 (Iowa 1990). In other words, any acts of discrimination which occurred prior to 2004 — even *if* the claims were otherwise meritorious — are time-barred because Rebouche did not timely file a charge with the EEOC or the ICRC.[2]

b. **GJE mapping in 2004**

---

[1] Prior to an amendment in 2007, the deadline for filing a claim with the ICRC was also 180 days.

[2] In any event, the Court finds that Rebouche did not suffer any adverse employment action in 2001 and, therefore, is unable to establish a *prima facie* case of discrimination or retaliation.

12

Next, Rebouche claims that her failure to receive a pay grade increase when GJE was implemented in 2004 was the result of sex discrimination. Because Rebouche has not provided any direct evidence of sex discrimination against her, the Court analyzes her claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Rebouche has the initial burden of establishing a *prima facie* case of sex discrimination. Specifically, Rebouche must show that she (1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class. *Jackman*, 728 F.3d at 804.

Deere concedes that Rebouche was a member of a protected class and was meeting Deere's legitimate job expectations. Deere argues, however, that Rebouche is unable to establish a *prima facie* case of discrimination because she did not suffer an adverse employment action, nor was she treated differently than similarly situated employees who were not members of the protected class.

Here, Rebouche claims that the "adverse employment action" was the failure to promote her to a higher pay grade when GJE was implemented. A failure to promote or provide a pay increase may constitute an "adverse employment action." *AuBuchon v. Geithner*, 743 F.3d 638, 643 (8th Cir. 2014) ("Unquestionably, failure to promote can constitute an adverse employment action that would support a plaintiff's retaliation claim."). Accordingly, Rebouche has met this requirement of a *prima facie* case.

Rebouche must also show, however, that she was treated differently than similarly situated employees who were not members of her protected class. It is at this step that Rebouche's claim fails. Prior to GJE, Rebouche's job title was chemical/metallurgical engineer, at pay grade 7. After GJE was implemented, Rebouche remained at pay grade 7, with a job title of Engineer II Product. Three other chemical/metallurgical engineers were treated identically.

13

To support her claim of sex discrimination, Rebouche points to three male metallurgists. Gary Schmadeke was a *senior* chemical/metallurgical engineer prior to GJE, at pay grade 8, and was mapped under GJE as a Supervisor Product Engineering I, remaining at pay grade 8. When GJE was implemented, Schmadeke had persons reporting directly to him, while Rebouche did not. Fred Van Schepen was a senior engineer prior to GJE at pay grade 8 and, following implementation of GJE, was Environmental Professional Staff, responsible for supervising all environmental engineers, and promoted to pay grade 9. Joe Wilson was also a senior engineer at pay grade 8 prior to GJE, and was promoted to pay grade 9, with a title of Staff Engineer Product.

The Eighth Circuit Court of Appeals has identified two lines of cases on the standard to be applied when determining whether employees are "similarly situated" at the *prima facie* stage of the *McDonnell Douglas* test. *See Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009). Because the burden of establishing a *prima facie* case of disparate treatment is "not onerous," one line of cases sets a "low threshold" of determining whether employees are similarly situated. *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The other line of cases more rigorously requires that the employees be "similarly situated in all respects." *Id. If* an employee establishes a *prima facie* case of discrimination, then determining at the third step of *McDonnell Douglas* whether the employer's proffered reasons for its action were pretextual requires a "rigorous" examination of whether the comparator employees were similarly situated. *Id.*

Even applying the "low threshold" standard in determining whether Rebouche has established a *prima facie* case of discrimination, the Court concludes that Rebouche was not "similarly situated" as the three male employees, two of whom received a pay grade increase when GJE was implemented. Two of the male employees cited by Rebouche in her deposition had supervisory responsibilities. Rebouche did not have any employees

14

directly reporting to her. All three of the comparator employees were at a higher pay grade prior to GJE being implemented. Conversely, the three other chemical/metallurgical engineers who *were* "similarly situated" to Rebouche prior to GJE — at pay grade 7 — were treated identically to Rebouche. That is, all four chemical/metallurgical engineers (including Rebouche) were given the job title of Engineer II Product, and remained at pay grade 7.

In resisting a motion for summary judgment, "a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (quoting *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Because Rebouche has not shown that her failure to receive a pay grade promotion in 2004 was the result of being treated differently than similarly situated employees who are not members of the protected class, she has failed to establish a *prima facie* case of sex discrimination and, therefore, Counts I and V will be dismissed.

### B. Rebouche's Retaliation Claims

#### 1. Applicable Law

The Court will next address Rebouche's claim that Defendants retaliated against her in violation of Title VII and the ICRA. Title VII makes it unlawful for an employer to discriminate against an employee because she has "opposed" an unlawful employment practice or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Similarly, the ICRA makes it a discriminatory practice for any person to retaliate against another person "because such person has lawfully opposed any practice forbidden under

this chapter, obeys the provisions of this chapter, or has filed a complaint, testified, or assisted in any proceeding under this chapter." Iowa Code § 216.11(2).

Without direct evidence of a retaliatory motive, the Court analyzes retaliation claims under the burden-shifting framework of *McDonnell Douglas*. *Stewart v. Independent School Dist. No. 196*, 471 F.3d 1034, 1042-43 (8th Cir. 2007). Using the analytical construct of *McDonnell Douglas*, the initial burden is on the plaintiff to establish a *prima facie* case of retaliation. *Id.* at 1043. The plaintiff in a retaliation action must produce evidence "(1) that he or she engaged in statutorily protected activities; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Id.* (quoting *Greene v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)). *Accord Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004) (enumerating the elements necessary to establish a *prima facie* case of retaliation under the ICRA).

If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to show a "non-retaliatory reason for the adverse employment action." *Stewart*, 481 F.3d at 1043. If the defendant can show a legitimate, non-retaliatory reason for its actions, then the burden returns to the plaintiff to present evidence that "(1) creates a question of fact as to whether defendant's reason was pretextual and (2) creates a reasonable inference that defendant acted in retaliation." *Id.* (quoting *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005)).

### 2. Discussion

It is undisputed that Rebouche engaged in statutorily protected activities by filing a charge with the EEOC on October 27, 2004. Defendants argue, however, that Rebouche is unable to establish a *prima facie* case of retaliation because no adverse employment

action was taken against her. Rebouche argues that she "was not given appropriate year-end ratings" and that Boardman "blocked" timely pay grade increases.[3]

A recent Eighth Circuit case sets forth the general definition regarding an "adverse employment action."

> An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge. However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.

*Jackman v. Fifth Judicial Dist. Dept. of Correctional Services*, 728 F.3d 800, 804 (8th Cir. 2013) (internal citation omitted). *See also Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 853 (8th Cir. 2000) ("Termination, reduction in pay

---

[3] In their brief, Defendants also address the elimination of Rebouche's job in 2001 and her subsequent transfer to another position at the same salary, grade, and position title. In her response to Defendants' statement of facts, Rebouche "admits that she does not contend that Burris took any retaliatory action against her for her 1998 complaint." *See* Plaintiff's Response to Defendants' State of Facts (docket number 74-4), ¶ 34 at 3. In any event, as discussed earlier in this Ruling, Rebouche's claim for retaliation in 2001, if any, is time-barred.

In their brief, Defendants also address alleged "general mistreatment" by Boardman. Rebouche does not respond to the argument in her brief and, apparently, concedes the point. The United States Supreme Court has said that the law does not set forth "a general civility code for the American Workplace." *Burlington Northern & Santa Fe Ry. Co. v. White*, 538 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). That Boardman was "not very nice" or that he exhibited hostility to employees who worked with rubbers or polymers — including both males and females — through "a lot of subtle little things," does not rise to the level of an adverse employment action for Title VII or ICRA purposes.

or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not.") (internal citation omitted).

Rebouche complains that her performance evaluations in 2004 and 2005 were unjustified and inaccurate. The case law is clear, however, that a performance evaluation does not constitute an adverse employment action unless it is subsequently relied upon to detrimentally alter the employee's employment.

> A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment. An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.

*Turner v. Gonzales*, 421 F.3d 688, 696 (8th Cir. 2005) (quoting *Spears*, 210 F.3d at 854). Accordingly, even *if* Rebouche's performance evaluations for 2004 and 2005 were otherwise unfair or inaccurate — and the Court cannot make that finding on this record — they do not constitute an adverse employment action unless Deere relied on those evaluations in denying Rebouche promotions after that time.

That brings us to Rebouche's final claim, that Boardman "blocked" her promotion to a higher pay grade. Rebouche was promoted to a pay grade 8 position in 2007 and was subsequently promoted to pay grade 9. Rebouche claims, however, that her promotions were delayed in retaliation for her filing a claim with the EEOC in October 2004.

Even viewing the evidence in the light most favorable to Rebouche, the Court concludes that she has failed to establish a *prima facie* case of retaliation. Rebouche has not shown that Boardman blocked an increase in pay grade or, if he did, that it was causally connected to Rebouche filing a charge of discrimination. In fact, Rebouche is

unable to show that Boardman even *knew* that Rebouche had filed a discrimination charge. Because Rebouche cannot show that she suffered any "adverse employment action" following her complaint to the EEOC or, if such adverse employment action did occur, it was causally connected to her complaint, her claims of retaliation must fail. Counts II and VI will be dismissed.

### C. Additional Defenses

In their brief, Defendants argue that Rebouche's claims should be dismissed for additional reasons, including a failure to exhaust administrative remedies, failing to raise administratively certain claims against Burris and Boardman individually, and the doctrine of laches. Because the Court has concluded that Rebouche's claims fail on the merits, it is unnecessary to address these additional defenses.

## VI. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Motion for Summary Judgment (docket number 58) filed by the Defendants is **GRANTED**.

2. The Complaint filed by Plaintiff is **DISMISSED**.

3. This case is **CLOSED**.

DATED this 8th day of July, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA